**Rudy DAVILA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–226.**

Supreme Court of Wyoming.

April 23, 1992.

Public Defender Program: Leonard Munker, State Public Defender; Dave Gosar, Appellate Counsel, Cheyenne, Wyoming Defender Aid Program: Gerald M. Gallivan, Director; and Donald Gallegos, Student Intern, Laramie, for appellant.

Joseph B. Meyer, Atty. Gen.; Sylvia L. Hackl, Deputy Atty. Gen.; Karen A. Byrne, Senior Asst. Atty. Gen.; Prosecution Assistance Program: Theodore E. Lauer, Director; and Thomas L. Lynch, Student Intern, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Rudy Davila appeals from his conviction on a charge of burglary in violation of Wyo.Stat. § 6–3–301(a) and (b) (June 1988). The district court entered its judgment and sentence after accepting Davila's plea of nolo contendere.

Davila states these issues:

I. The failure of the county court to conduct a valid preliminary hearing, in which appellant was afforded counsel of his choice because he was deemed to have waived his right to counsel by his actions, resulted in a loss of jurisdiction and voided the order binding the appellant over for trial.

II. Did the county court's denial of appellant's request for a continuance to

retain counsel of his choice violate his sixth and fourteenth amendment rights to have counsel present at a critical stage of the criminal proceedings under the federal constitution and a similar right under Article I § 6 & § 10 of the state constitution.

III. Did appellant's actions, requesting a continuance four days before the date set for the preliminary hearing, constitute a waiver of the right to have counsel represent him at the preliminary hearing?

The state addresses each of Davila's issues, and adds another:

Appellant waived any irregularities in the conduct of the preliminary hearing when he entered a plea of nolo contendere which was accepted by the district court.

The issue presented by the state resolves this case. We affirm.

## FACTS

Davila was initially charged with two felonies: aiding and abetting another in the commission of auto burglary, and conspiracy to commit auto burglary. His initial appearance was held on March 2, 1990. He was accompanied by attorney Walter A. Murray, Jr., who stated that he appeared only for purposes of bond. The court informed Davila of his right to a preliminary hearing and right to counsel. He told the court that he would retain his own attorney. On March 5, 1990, a preliminary hearing was set for March 20, 1990.

On March 16, 1990, Davila filed a pro se motion to continue the preliminary hearing to enable him to finalize an agreement with his attorney of choice, Walter A. Murray, Jr. The county court denied Davila's motion on March 19, 1990, and Davila appeared at the preliminary hearing the next day without counsel. He was bound over for trial in district court.

On March 30, 1990, Davila filed an affidavit in forma pauperis in the district court and an attorney was appointed to represent him. Murray subsequently entered an appearance as Davila's counsel on April 26, 1990. On May 7, 1990, Murray filed a motion on Davila's behalf to dismiss the information on the ground that Davila was denied his right to representation at the preliminary hearing. The court denied the motion after a hearing on June 1, 1990.

On July 20, 1990, Davila changed his plea on the burglary count to nolo contendere. As part of the plea agreement the state then moved to dismiss the conspiracy count. The court dismissed the conspiracy count and accepted Davila's nolo contendere plea on the burglary charge. He received a sentence which ran concurrently with a term being served on another sentence resulting from probation revocation.

## DISCUSSION

This case is resolved by the state's argument that Davila's nolo contendere plea waives all nonjurisdictional defenses, including his claim that he was denied counsel at the preliminary hearing. Because his plea constitutes a waiver it is not necessary or appropriate for this court to consider whether, on these facts, the county court should have afforded Davila representation at his preliminary hearing.

A plea of nolo contendere has the same effect in criminal cases as a guilty plea. *Zanetti v. State*, 783 P.2d 134, 139 (Wyo.1989). As a guilty plea waives all nonjurisdictional defenses, *Sword v. State*, 746 P.2d 423, 425 (Wyo.1987), so does a plea of nolo contendere. *Zanetti*, 783 P.2d at 139. Thus, unless Davila's claim was jurisdictional, it has been waived by his plea.

Jurisdictional claims involve "the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628, 636 (1974). Jurisdictional defects include: unconstitutionality of the statute defining the crime pled to, *Armijo v. State*, 678 P.2d 864, 867–68 (Wyo.1984) failure of the indictment or information to state an offense, and double jeopardy. *Tompkins v. State*, 705 P.2d 836, 840 (Wyo. 1985), *cert. denied sub nom., Tompkins v.*

*Wyoming,* 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986).

■ Nonjurisdictional defects, on the other hand, are those "objections and defenses which would not prevent a trial." *Sword,* 746 P.2d at 426. Even constitutional challenges to pretrial proceedings fall into this category. *Zanetti,* 783 P.2d at 138.

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Id.* at 138 (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)). This court's jurisprudence provides several examples of nonjurisdictional defects: use of inadmissible evidence (claim of unlawful search and seizure, *Tompkins,* 705 P.2d at 839–40) (claim of unlawfully obtained statements, *Vallo v. State,* 726 P.2d 1045 (Wyo.1986)); claim that grand jury was improperly convened and conducted, *Sword,* 746 P.2d at 426; and claim of violation of the right to speedy trial, *Zanetti,* 783 P.2d at 138.

■ Davila's claim that he was improperly denied counsel at his preliminary hearing is nonjurisdictional. Denial of the right to representation does not implicate "the very power of the state to bring the defendant into court to answer the charge brought against him," *Blackledge,* 417 U.S. at 30, 94 S.Ct. at 2103, 40 L.Ed.2d at 636, and would not have prevented a trial. The district court had jurisdiction to proceed to trial and, in fact, had it granted Davila's motion to dismiss, the state could have refiled and proceeded with a new preliminary hearing and trial. As a result, Davila's plea of nolo contendere waived his claim that he was denied counsel at his preliminary hearing.

Davila's conviction is affirmed.

**URBIGKIT, Chief Justice, dissenting.**

Some reasonable acquaintanceship with stated standards of criminal law for this state would provide certainty in knowledge that what in this case, under the constitution, statutes and court rules, could not happen—did happen. The trial proceeding which procedurally denied access to justice for Rudy Davila and that of his co-actor, Antonio Robinson belies acceptability by any court within Wyoming law that what occurred did, in fact, occur. From this majority's acquiescence in denied counsel to the criminally accused, I strenuously dissent. Again in this case, the question is not so much guilt or innocence, although guilt was continuously denied by both Davila and Robinson, but rather a process where it appears that the court system itself is inclined to ignore fundamental principles and clearly established rules. It is absolutely inconceivable to me that this preliminary hearing was conducted without counsel being available to assist Davila or Robinson. See, in current example for the requirement that counsel shall be provided to the criminally charged defendant, *United States v. Reilley,* 948 F.2d 648 (10th Cir.1991).

Demonstrated denial here of the right of an accused to have counsel at a preliminary hearing, and how that county court denial pollutes succeeding proceedings, requires close factual examination.

I.

## HOW THIS HAPPENED IN THE TRIAL PROCEEDING

**A. *Crime.***

Two teenagers admittedly broke into a van at a tire distribution store and stole a number of tires. The miscreants were promptly apprehended in another burglary and, during their confession, admitted guilt of this offense and levied joint responsibility upon two adults, Robinson, appellant in appeal No. 90–286, and Davila, appellant in this case. Upon search of Robinson's vehicle, police found a stolen tire mounted on a rim and two tools, a screwdriver and a tire lug nut wrench, described for purposes of the prosecution as a "pry bar." (Every properly maintained vehicle has one.) The

search warrants used were not included as documents in this record.

## B. *Arrest and Pre–Preliminary Hearing Proceedings.*

Arrest of the two adults immediately followed. In Davila, an undated advisement form was filed, followed by a March 5, 1990 notice and order for a preliminary hearing prepared by the county court clerk setting a March 20, 1990 hearing date. On March 16, four days before the hearing date, Davila filed a motion for continuance stating:

> COMES NOW, Rudy Davila, Defendant Pro Se, and respectively [sic] moves the Court for an Order to Continue the Preliminary hearing scheduled for March 20, 1990 by and for the reason following: That the Defendant is making arrangements to retain Walter A. Murray, Jr. as his attorney and needs 20 days in which to finalize the agreement. That Mr. Murray begins a Felony trial in Rawlins on March 19, 1990 and the number of the days for that trial is unknown.

The similar Robinson advisement form was dated and signed, and both Davila and Robinson posted bond. The preliminary hearing for Robinson was likewise set for the same date and time as Davila's preliminary hearing. Robinson had, however, two days earlier, on March 14, or six days before the hearing date, likewise signed and filed a motion for continuance which stated:

> COMES NOW, Antonio Robinson, Defendant Pro Se, and respectively [sic] moves the Court for an Order to Continue the Preliminary hearing scheduled for March 20[,] 1990 by and for the reason following: That the Defendant is making arrangements to retain Walter A. Murray, Jr. as his attorney and needs 20 days in which to finalize the agreement. That Mr. Murray begins a Felony trial in Rawlins on March 19, 1990 and the number of the days for that trial is unknown.

## C. *Preliminary Hearing.*

Attached to each motion for continuance was an order form granting a continuance which was apparently ignored or rejected by the judge. From style and form, it was apparent that an attorney had prepared both motions and the record confirms that the attorney was Walter A. Murray, Jr. (Murray)—anticipated counsel. Murray was a contract public defender on a part-time basis in Natrona County, Wyoming, and also engaged in active criminal defense in that general vicinity. He had previously served as a county judge in Campbell County, Wyoming.[1] Following the March 14 request for continuance, the next entry in the Robinson record was a "bind over" order finding probable cause as charged. The March 16 request for continuance by Davila provides more record information. Evidencing a denial, there is a handwritten notation on the motion, and not included on the submitted order, stating: "3/19/90 DENIED Michael Huber" (the county judge). Another file stamp on the instrument was dated the same day—March 19. No indication is provided in the record that the notice of denial of counsel for either Davila or Robinson was then provided to them in advance of the scheduled March 20 preliminary hearing.[2] By transcribing the tape, we learn what occurred at that session:

---

1. This record provides minimal information. The preliminary hearing detail was not transcribed until time was taken to write this dissent and the district court proceedings are modest about any explanation for Murray's preparation of the motions for continuance to be signed pro se by the two prospective clients. A not so illogical conclusion was that in his activities as a fee attorney, he did not want to enter an appearance until some kind of retainer was paid.

   Following resignation as a county judge in 1988, Murray entered the private practice of law and also represented the Public Defender's office part-time in conflict cases. He became a member of the staff of the Public Defender's office as a contract employee sometime after these events had occurred (November 1, 1990).

2. This court has previously stated that audio tapes provided as a part of the record are to be transcribed. An additional problem presented is that the county court clerk's office in Casper, Wyoming has a recording machine with a reduced speed so that normal transcription equipment cannot be used to either listen or transcribe. Although the record does reflect that the tape was played for both District Judge

[PRESIDING COUNTY JUDGE]: We are here today for a preliminary hearing. Today's date is March 20, 1990.

Now the record should reflect that both Mr. Robinson and Mr. Davila have filed motions for continuance on the grounds that they wish to hire Walter Murray to represent them and that they need more time to do that and that Mr. Murray is busy today in a trial in Rawlins. Now Mr. Robinson if you'd want to come up here and Mr. Davila come up and have a seat there at counsel table. Now is there anything else that you gentlemen want to say to the court about this?

[DAVILA]: No sir.

[ROBINSON]: Um, I would like to say I would like to have an attorney present for my preliminary hearing. Even if it took another ten days or something like that, I'll probably have to retain another lawyer.

[PRESIDING COUNTY JUDGE]: Well sir, having an attorney at your preliminary hearing definitely is a good idea. You've had since March 2 to either retain an attorney or to ask the court to appoint a court appointed lawyer, but there is nothing in your file indicating any request for a court appointed lawyer and also there is nothing in your file, other than your reference in your motion, your pro se motion, for continuance that you want, and all that says is that you are making arrangements to retain Mr. Murray. There is nothing in the nature of an entry of appearance by him or any other attorney. This from the file looks like you simply have put off hiring an attorney and now you're here today wanting this hearing to be continued. Is there anything, Mr. Robinson, you want to say about this?

[ROBINSON]: Well uh, I get paid every two weeks and this was the day for the preliminary hearing. I had the money to retain, but he's out of town now for that trial and he said make a motion for continuance after the trial, he said he doesn't know how many days the trial would be, so he said he'd motion for continuance. He said he would accept my case.

[PRESIDING COUNTY JUDGE]: Well, Mr. Davila, is there anything you want to say here?

[DAVILA]: Well, your honor, is that I had found out the charges against me and I was revoked and haven't been able to go into the district court to get a bond hearing and I'm in the same situation and I'm working and make enough money to hire Mr. Murray, but he's been in trial and stuff and he just had us fill out the paper work and he said he would take the case. But I talked to the employer and I'm still employed. He understands the situation.

[PRESIDING COUNTY JUDGE]: Well also here in your case, Mr. Davila, the only reference to an attorney is to Mr. Murray and a motion for a continuance. He has not entered an appearance, uh, from everything in the file here, you are pro se acting as your own attorney. Is there anything else that the state wants to say here?

[COUNTY PROSECUTING ATTORNEY]: No, your honor.

[PRESIDING COUNTY JUDGE]: Well, Mr. Robinson and Mr. Davila, your motions for continuances will be denied. It appears to the court that you've had since March 2 to secure the services of an attorney or to request a court appointed attorney. You have not done either of those things. The fact that Mr. Murray is in a trial in Rawlins and we don't know how long that's going to take or not take, or what's going on there, that's another factor here too, but your request for continuance at this point is denied. These two cases will be consolidated for the purposes of preliminary hearing only. [County Prosecuting Attorney], you may

Spangler and District Judge Leimback, the tape should have been transcribed by Davila's and

Robinson's counsel as a part of their presenta-

proceed.[3]

[COUNTY PROSECUTING ATTORNEY]: Thank you, your honor. Looking at the charges here, I do have one motion to amend. In Count II it appears that there is a typographical error. Count II as it reads now says that on or about the 6th day of February, 1990 in the County of Natrona, State of Wyoming, the said Rudy, and I'm reading from Mr. Davila's charges and the two charges against these two men are identical, uh, did unlawfully agree with one or more person that they or one or more of them would commit a crime, to wit: auto burglary, and one or more of them did an overt act to effect, and then the word "which" appears, "w-h-i-c-h", the object of that agreement. That appears to be surplusage and I move at this time to delete that one word "which" from Count II from both Mr. Davila's and Mr. Robinson's criminal complaint.

[PRESIDING COUNTY JUDGE]: That will be granted.

[COUNTY PROSECUTING ATTORNEY]: Thank you, your honor. The State will waive any type of opening statement, your honor, and will call Jim Lien to the witness stand.[4]

D. *Arraignment and First Entry of Appearance By Counsel in District Court.*

Clearly, fault, if any, in the unrepresented appearance, rested with others than Davila and Robinson. *Peralta v. State,* 111 N.M. 667, 808 P.2d 637 (1991). Informations were filed in the district court against both Davila and Robinson on March 26. Requests for setting dated March 27 were filed for a district court

appearance of April 19 for Robinson, with original notice on behalf of Robinson to Murray which was marked out and Robinson's name inserted with a new address in handwritten form, and May 1 for Davila.

On April 26, Murray entered an appearance for Robinson by filing a motion to dismiss the information based upon the non-counseled conduct of the preliminary hearing. That motion, first filed for Robinson and then later filed for Davila, stated:

COMES NOW the Defendant, by and through his attorney, Walter A. Murray, Jr., and moves the Court for an order to dismiss the information in this matter based upon the following grounds:

1. That this Court lacks jurisdiction over the matter in that under the Wyoming Rules of Criminal Procedure, Rule 7(b), the Defendant can only be bound over to District Court if the County Court finds from the evidence presented at the preliminary hearing that probable cause existed to believe that the offense charged has been committed and that the Defendant committed that offense. The fact that the Defendant was denied his right to an attorney voids any finding of probable cause. At the preliminary hearing the Judge found probable cause as to the crime charged, while the Defendant was without benefit of attorney. The Information filed in this Court pursuant to Rule 9 of the Wyoming Rules of Criminal Procedure derives its legitimacy from the preliminary hearing and if that hearing is invalid the Information is also.

2. At the preliminary hearing in this matter, the Defendant by formal motion requested a continuance to enable him to retain an attorney of his choice and that

tion of motions to dismiss the district court information.

3. The compelling problem is that the motion for continuance had been denied the day before and no notice had been given to Davila of that fact or that he would be required to proceed through the preliminary hearing without counsel which he had requested. No action on the Robinson request is reflected in any way in the record until Robinson appeared without counsel at the hearing. Wyoming county courts do not have any usually applied method for an attor-

ney to originally enter an appearance in a criminal case except by filing motions or pleadings. The sitting judge for this case was well acquainted with Murray since the two had been colleagues in service as county judges at the same time in near adjacent counties.

4. The preliminary hearing consisted of the testimony of the investigating officer from the Casper Police Department. His testimony consisted principally of hearsay recitation about what the juveniles had stated in confession regarding their burglary and property re-sale activities.

continuance was denied thus depriving the Defendant of this right to an attorney, equal protection, and due process under the Constitution of The United States of America and the State of Wyoming. The Wyoming Rules of Criminal Procedure, Rule 6 also requires the Defendant have an attorney at the Preliminary hearing. The Defendant has the right to confront witnesses against him and even the right to cross examine those who testified at the preliminary hearing [through] an attorney and by being denied a continuance to seek coun[sel] or to retain coun[sel] was thus denying him right to coun[sel] and Due process. It is a well established rule that the preliminary hearing is an essential stage of the Criminal proceedings thus requiring an attorney. *White v. Maryland,* (1963) 373 US 59, 10 L.Ed.2d 193, 83 S Ct 1050; *Powell v. Alabama,* (1932) 287 US 45, 77 L.Ed. 158, 53 S Ct 55; *Coleman v. Alabama,* 399 US 1, 26 L.Ed.2d 387, 90 S Ct 1999.

The Wyoming Supreme Court addressed this issue * * * in *Haight v. State,* 654 P.2d 1232 and set forth the reasons for an attorney at preliminary hearing and those reasons include cross examination by the defense attorney so that he may expose the weakness of the State[']s case which might prevent the Judge from binding over the Defendant and fashion a tool for impeachment at trial. The main reason is to prevent innocent persons being held on baseless charges.

The Defendant requested that the matter be continued so that he could hire an attorney of his choice an two grounds[,] one he had not finalized an agreement with the attorney and secondly the attorney of his choice was in trial in another county.

3. The Preliminary hearing as taken as a whole illustrates that the defendant was denied each and every right set forth above by the denial of a continuance and forcing him to Preliminary hearing without the aid of an attorney.

WHEREFORE, Defendant prays that the Court grant Defendant[']s Motion to dismiss the information with prejudice or in the alternative remand the matter back to county court for further preliminary hearing.

At the April 19 arraignment of Robinson, the following occurred:

MR. MURRAY: Your Honor, at this time we are going to make an oral motion, followed up, with the Court's permission, with a memorandum to dismiss the Information and remand the matter back to County Court for a new preliminary hearing, on the grounds the defendant was denied counsel at that preliminary hearing, he was forced to proceed on his own[.] [A]t this point in time we would stand moot as to any pleas on this matter.

THE COURT: I will enter pleas of not guilty on behalf of the defendant to both counts then. Do you wish to be heard on bond, Mr. Murray?

At the May 1 arraignment of Davila, counsel made a similar statement:

MR. MURRAY: Your Honor, the defendants, both Mr. Robinson and Mr. Davila at the time of the preliminary hearing had no attorney, they had requested a continuance in that matter, and the State objected to the continuance, and forced both Mr. Davila and Mr. Robinson to preliminary hearing without the right to an attorney.

In Robinson, the decision of the district court motion came by a written order of Judge Dan Spangler filed May 24, 1990, and stated:

THIS MATTER having come before the Court this 15th day of May, 1990 and the Defendant appearing in person and with his attorney, Walter Murray, and the State of Wyoming being represented by Michael A. Blonigen, Assistant District Attorney, and the Court having found that the County Court Judge did not abuse his discretion in denying a continuance in this matter at the preliminary hearing, it is ordered that the Defendant's Motion to Dismiss should be, and is hereby, denied.

Consideration of the motion for Davila came at a later date in an appearance before Judge Harry E. Leimback on June 1. After recognizing that the other local district judge, Judge Spangler, had already ruled, the motion was again denied. The disposition in both cases was so expeditious that the prosecuting attorney's office was never required to file any written response to the constitutional issue regarding right to counsel at a preliminary hearing.

The patent absurdity of the application of any waiver concept to the situation faced by both Davila and Robinson at the preliminary hearing belies belief for even any pro forma judicial recognition. Obviously, this was not the basis upon which this court's decision is actually decided, but consideration of those issues is required in order to reach the dispositive concept of the nolo contendere plea which constituted a forfeiture or relinquishment of the constitutional deprivation encountered in the non-counseled preliminary hearing.

From all that appears in the Robinson record, Murray was proceeding as a fee attorney since a public defender appointment had not been made. A somewhat different pathway was taken by Davila when, on March 30, he filed a request for counsel to be appointed and another public defender representative was initially assigned. At approximately the same time, Murray, apparently as a fee attorney, then entered an appearance in Davila's defense and proceeded, some week or so later than in the case in Robinson, by filing the identical motion regarding the impropriety of the conducted preliminary hearing in the absence of counsel. By that time also, Davila, earlier on bond, had been re-arrested on a parole revocation proceeding which was subsequently conducted by Judge Spangler with an order being entered revoking parole and an extended penitentiary sentence entered based primarily, it appears from other documents in the record, on facts elicited regarding this currently charged offense. Murray had represented Davila on the probation revocation proceeding, but whether as a fee attorney or as a member of the Public Defender's office is not disclosed in this record.

Prior to trial, the district attorney moved for consolidation of the two cases, which was granted. Thereafter, both Davila and Robinson, after a period of plea negotiation, came back before the district court with a plea bargain, including the decision for a change of plea. It is under these circumstances that the majority now finds a waiver, not of counsel at the preliminary hearing but of the constitutional error that occurred at the preliminary hearing by virtue of the plea negotiations and nolo contendere plea which followed resulting in the sentence from which this appeal is presented.

### E. *Nolo Contendere Plea in District Court.*

At the Robinson change of plea proceeding, which occurred first, Murray stated to the district court:

I would inform the Court that as his attorney, I do not agree nor will participate in this plea other than to assist the Defendant. He has continually denied any involvement in this crime to me and he enters his plea because he feels that he will be unable to prove his case, or excuse me, that the State will be able to prove their case with what he feels is perjured testimony.

He further feels that he has been railroaded through the system starting with his denial of an attorney at preliminary hearing. He has informed me that he has lost all hope and wishes to end this matter at this time, and that would be over my objections, Your Honor.

\*   \*   \*   \*   \*   \*

MR. MURRAY: Your Honor, the Defendant will plead no contest in this matter.

THE COURT: Mr. Robinson, you have talked with your attorney?

THE DEFENDANT: Yes sir, Your Honor.

THE COURT: And he has explained to you your rights?

THE DEFENDANT: Yes sir.

THE COURT: And you have explained to him the circumstances surrounding this event?

THE DEFENDANT: Yes sir, Your Honor.

THE COURT: I take it from what he says, you told him that you are not guilty?

THE DEFENDANT: Yes, sir.

MR. MURRAY: I could interject, Your Honor, that the Defendant, that in reviewing the probable cause statements, the transcript of the preliminary hearing, and having participated in a revocation hearing on the other Defendant in this case, the likelihood of conviction does, at least to the Defendant, seem great.

THE COURT: Well you know, I haven't been confronted with such a problem in my six years on the Bench. I understand that he wants to give up and I understand that he wants to enter a plea of no contest so that he won't have to produce a factual basis, but on the other hand, he tells us through his attorney and in his direct statement that he is not guilty.

MR. BLONIGEN: Your Honor, if I may recommend what I think may be an appropriate course of action. In many states they have what is recognized as an Alford Plea where the Defendant pleads guilty in order to accept an agreement. Traditionally in Wyoming we have not used that. Instead we have used nolo contendere pleas. In Alford they said they could plead guilty under those circumstances. I think he could plead nolo contendere. I would recommend to the Court that we proceed with this plea at this time, that the State produce for the Court what it believes to be the factual basis for its case, and if the Court believes that there is an adequate basis upon which the Defendant can choose not to contest the charges, that you accept the plea. If you do not feel there is an adequate basis of not contesting the charges, then of course the Court can reject the plea.

THE COURT: That sounds like a good suggestion.

I presume that we'll do that at some different time when you have had an opportunity to produce some kind of evidence.

Thereafter, in the somewhat extended proceedings, District Judge Leimback, made every effort to assure Robinson that he had the right to plead innocent and stand trial, but upon Robinson's continued maintenance of his position to plead nolo contendere and after suitable facts regarding guilt were provided to the district court, the plea was accepted:

THE COURT: Well, I find from the recitation that under the facts recited, conviction would be probable, that there is a basis for the entry of the plea. I find that at least it appears that at least five people would be testifying, and further, that there is sufficient corroboration of the oral testimony to indicate to this Court rather strongly that a conviction would follow at the close of a trial.

Let the plea of nolo contendere be accepted in to the record.

Similarly, in regard to Davila, which thereafter immediately followed, defense counsel stated:

The Defendant will enter a plea to Count I. The State has moved to dismiss Count II. Any time that this Court—Mr. Blonigen, help me with this—any time that this Court sentences the Defendant to will run concurrent with 10392 and the Defendant will receive credit for his time served.

Again, Your Honor, I will not agree or participate in this plea other than to assist the Defendant. He has consistently denied involvement in this case and enters his plea because he feels that the State will be able to prove its case with what he believes to be perjured testimony, and he further feels that he has been railroaded through the system starting with his denial of an attorney at the preliminary hearing and forced to go through a revocation hearing with an attorney assisting whom he did not wish to have present. He has lost all hope and wishes to end this matter at this point. [Referencing the arraignment of

Robinson, which had just then been completed with a change of plea.]

Again, the district court exercised extreme care to determine that the plea was voluntary and found that there was a factual basis for the entry of the plea of nolo contendere.

## II.

### ISSUES PRESENTED

The important issues which are presented are now bypassed in resolution through a waiver of constitutional rights concept authored by the majority. The significance of a preliminary hearing was comprehensively addressed in recent time in both the majority and special concurrence in *Cardenas v. State*, 811 P.2d 989 (Wyo.1991) and more recently presented first by a petition in *Rude v. State*, No. 91–211 (Wyo. Sept. 26, 1991) (order denying petition for writ of certiorari) (request to accept a writ of certiorari questioning the improprieties of a preliminary hearing) and then readdressed by an interim case appeal which this court again refused to hear. *Rude v. State*, No. 91–228 (Wyo. Nov. 13, 1991) (order dismissing appeal).

In general, it appears that the majority creates the unusual standard which provides a constitutional right to have counsel at a preliminary hearing, but ignores the right if opportunity to secure counsel is denied by the trial court. Furthermore, what occurs at a preliminary hearing is determinably insignificant, it would seem; unless, when something goes wrong, the defendant is irretrievably bound by the preliminary hearing testimony for what thereafter might occur in trial. *Cardenas*, 811 P.2d 989. *Cf. People v. New*, 427 Mich. 482, 398 N.W.2d 358 (1986), permitting interim appellate review by the circuit court judge. *See also Com. v. Gettemy*, 404 Pa.Super. 504, 591 A.2d 320 (1991) and *State v. Webb*, 160 Wis.2d 622, 467 N.W.2d 108, *cert. denied* —— U.S. ——, 112 S.Ct. 249, 116 L.Ed.2d 204 (1991).

A basic understanding of the preliminary hearing critical stage determination causes recognition how harm will result to the non-counseled defendant in pursuing his effort to defend. *Cardenas*, 811 P.2d 989. The constitutional deprivation and damage is done when the preliminary hearing is completed. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The opportunity for defensive theory development and informational acquisition has been lost. Actually, in these cases, the lack of advance notice that the district court was going to deny the continuance also eliminated alternative right to secure counsel and then precluded presentation of witnesses or use of subpoenas of the individuals whose hearsay testimony, through the investigating officer, was used for the preliminary hearing determination of probable cause.

The preliminary hearing proceeded to be authenticated essentially by hearsay testimony, but also lacking an opportunity for the exercise of an effective right of cross-examination. The session constituted a total denial of all realistic defensive rights for Davila and Robinson in the preliminary hearing. In actuality, the proceedings would have been as equally well served if the arresting officer had met with the committing jurist in ex parte visitation to explain that a crime had been committed and why the district court should believe that the defendants were the responsible miscreants. If no real rights were to be provided to the accused in the preliminary hearing, district court time could providently be saved and an automatic decision achieved without providing the hearing at all.

The assistance of counsel might well have materially aided Davila and Robinson in coping with several aspects of these cases. *Carnley*, 369 U.S. at 507, 82 S.Ct. at 885. Differing from *Carnley*, however, the transcript reveals no effort of the county judge to be helpful to the two unrepresented defendants. It is harsh but validated in substance that at best the preliminary hearing was pro forma. As such, this session provides substance for the caution in *Carnley*, 369 U.S. at 524, 82 S.Ct. at 894 that justice lacks concurrence in first discussing admission of hearsay and then con-

cluded: "As a result [of unrepresented prosecution], the jury system—pride of the English-speaking world—becomes a trap for the layman because he is utterly without ability to make it serve the ends of justice."

Unfortunately, as an aspect of wide application in future Wyoming law, there are differentiated subjects in this appeal requiring proper attention. The first questions the right to actual assistance of counsel at a preliminary hearing in view of what occurred to Robinson and Davila when the part-time fee attorney/part-time public defender was not available because of conflicts on the date scheduled and the county court proceeded with the court session in the absence of the desired attorney or other appointed counsel. The total abject insufficiency of the proceedings is indelibly written in the quoted transcription of what did happen.[5]

### III.

### RIGHT TO COUNSEL FOR THE PRELIMINARY HEARING AND ITS WAIVER AT THAT TIME

It seems to be totally redundant to address here a denied right of Davila to have the assistance of counsel at the preliminary hearing with the issue dispositively addressed on a constitutional basis not only by the United States Supreme Court, *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), but by this court nearly fifteen years ago in *Hurst v. State*, 563 P.2d 232 (Wyo.1977). Hopefully, so that this error will not reoccur in the next fifteen years, the unanimity of the law as

continuously in effect since *Coleman* should be recognized. Cases from adjoining states are representative: *State v. Riley*, 106 Ariz. 318, 475 P.2d 932 (1970); *Hale v. Superior Court of City and County of San Francisco*, 15 Cal.3d 221, 124 Cal.Rptr. 57, 539 P.2d 817 (1975); *Schwader v. District Court In and For Tenth Judicial Dist.*, 172 Colo. 474, 474 P.2d 607 (1970); *State v. Edmonson*, 113 Idaho 230, 743 P.2d 459 (1987); *State v. Jones*, 233 Kan. 170, 660 P.2d 965 (1983); *State ex rel. Brackman v. District Court of First Judicial Dist. In and For Lewis and Clark County*, 172 Mont. 24, 560 P.2d 523 (1977); *Doggett v. State*, 91 Nev. 768, 542 P.2d 1066 (1975) (citing *Coleman*); *State ex rel. Peters v. McIntosh*, 80 N.M. 496, 458 P.2d 222 (1969); *Cleek v. State*, 748 P.2d 39 (Okl.Cr.1987); *State v. LaRue*, 5 Wash. App. 299, 487 P.2d 255 (1971).

The second issue is the waiver of the right to counsel under the circumstances presented. The total irrationality can be found by relating these events to what this court addressed in the case of *Ash v. State*, 555 P.2d 221 (1976), *reh'g denied* 560 P.2d 369 (Wyo.), *cert. denied* 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977), where no issue of counsel at preliminary hearing was raised and the attorney was available at trial. The factual situation in *Ash* is not comparable where public defender counsel was offered by the trial court at an early date and counsel was provided to assist during the trial. Certainly *Hurst*, 563 P.2d 232, a legitimate waiver case, could hardly be accorded the same perspective provided by the facts of these two cases. In *Hurst*, three separate attorneys had actually been

---

5. Possible over-emphasis may, at least, deny reoccurrence. Even a freshman in a law school test should recognize what should have occurred in this case. First, at least some advance notice should have been given about the continuance denial to Davila and Robinson to the office of the public defender and to the prospective counsel, Murray, at his office, who everybody surely knew had prepared the continuance request. In the absence of even this due process assistance, when the hearing was convened, counsel, whether public defender or not, should have been provided or affirmatively waived by Davila and Robinson—neither of which occurred. In conduct, the examining commission-

er (county judge) denied to Davila and Robinson any real right to a preliminary hearing, contrary to the requirements of W.R.Cr.P. 5.1 (formerly W.R.Cr.P. 7) and embarked on an exercise in futility except to provide the prosecution opportunity for a witness dress rehearsal. See *State v. Hamilton*, 104 N.M. 614, 725 P.2d 590 (1986), *cert. denied* 107 N.M. 132, 753 P.2d 1320 (1988) discussed in detail hereafter. See also *Gettemy*, 591 A.2d 320. Corrective responsibility was first vested in the district court to assess infection of the information by preliminary hearing defects. *State v. Humphrey*, 823 P.2d 464 (Utah 1991).

appointed for representation in a preliminary hearing and each was then rejected. This is hardly the same as where here, Davila and Robinson never had any actual opportunity to have any attorney. The dissent in *Ash*, by concurrence in *Hurst*, recognized that *Hurst* was totally dissimilar factually by continuing to reject the majority opinion in *Ash* by the special concurrence in *Hurst*. *Hurst*, 563 P.2d at 237. *See State v. Young*, 196 Kan. 63, 410 P.2d 256 (1966). The cited cases of *State v. Steele*, 620 P.2d 1026 (Wyo.1980) and *Chavez v. State*, 604 P.2d 1341 (Wyo.1979), *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980) are not inapposite. *Haight v. State*, 654 P.2d 1232 (Wyo.1982) involved conduct at the preliminary hearing, but not any constitutionally invested issue of denial of counsel in the proceeding. The judicial system has a responsibility to provide counsel to the criminally accused, including opportunity for adequate time to prepare a defense. *Peralta*, 808 P.2d 637.

It compounds the extremity, if not the absurdity, with which the occurrences in this proceeding abound, for the State to argue that Davila "waived" his right to counsel at the preliminary hearing. Obviously, the record as earlier quoted establishes that intended waiver did not occur. Overtly, the facts of the attempted effort to get representation speak for themselves, but a singular body of law here also defines the knowing and willingly, if not intelligent, requirement for waiver. In *State v. Lee*, 40 N.C.App. 165, 252 S.E.2d 225, 228 (1979), where it was held that conduct of the defendant in failing to employ counsel "during the period between 20 August, when the warrant was served on him, and 2 September, when he was tried * * *," did not sustain a waiver denial. *See also State v. Rocha*, 48 Or.App. 1017, 618 P.2d 475 (1980) involving the defendant's first request to have unlicensed persons and, when denied, the defendant then requested the appointment of a licensed attorney for help during the trial. The second request went unanswered, and on appeal the conviction was reversed for a new trial. "Defendant was never presented the alternative [of appointed counsel], making his self-representation a *fait accompli*." *Rocha*, 618 P.2d at 479. Like Oklahoma, preliminary hearings are required in felony proceedings in Wyoming. "Therefore, the right to counsel is much more 'critical' in this case than it was in *Coleman* [*v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387]." *Cleek*, 748 P.2d at 41. In *Cleek*, the court also recognized that " 'assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." ' " *Cleek*, 748 P.2d at 41 (quoting *Chapman v. State of California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, *reh'g denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967) and *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978)). No valid waiver existed.

To hold a preliminary hearing without counsel present, unless the right to counsel has been competently, intelligently and voluntarily waived, vitiates the hearing. In the broadly based case involving numerous incarcerated persons in New Mexico, Circuit Judge Phillips thoughtfully stated the principle in *Pearce v. Cox*, 354 F.2d 884, 890–91 (10th Cir.1965), *cert. denied* 384 U.S. 976, 86 S.Ct. 1869, 16 L.Ed.2d 685, *cert. denied* 384 U.S. 977, 86 S.Ct. 1871, 16 L.Ed.2d 686 (1966):

> Unless the right to be represented by counsel at a preliminary hearing is competently, intelligently, and voluntarily waived, the fact that the defendant was not so represented at the preliminary examination vitiates that hearing.   * * *
>
> * * * Of course, he is entitled to be represented by counsel, either of his own choosing or appointed by the court, at every critical stage of the proceeding in the district court. He may challenge the right of the state to proceed against him until he has been accorded a valid preliminary hearing, unless he has theretofore waived his right thereto. Such challenge may be made by a plea in abatement or any other appropriate manner. When a violation of the defendant's constitutional rights in a proceeding before the magistrate is brought to the attention of the state trial court and found to exist, it is

the accused's right to have the information abated, and the court's duty to abate it, until there has been a proper preliminary examination, and to remand the accused to the magistrate for such examination, unless the accused competently, intelligently, and voluntarily waives his right to such examination.

The further factor found in the Tenth Circuit Court of Appeals case where the plea was made at arraignment without continuing objection differentiates this case in result. We have here no arguable forfeiture by silence with arraignment in the district court. Davila properly continued his objection in the district court to the unconstitutional conduct afforded him by denial of counsel in the county court. *See State v. Vaughn*, 74 N.M. 365, 393 P.2d 711, 713 (1964), where, although a valid waiver was subsequently found as intelligent, willing and understanding, the court concluded:

> It is no longer open to question that the Federal Constitution stands as a jurisdictional bar to a valid conviction and sentence of an indigent accused who is denied the right to representation by counsel at any critical stage of a criminal proceeding. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. A preliminary examination may be such a critical stage, *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193. Indeed, Art. II, Sec. 14 of the New Mexico Constitution provides that no person shall be held to answer to a felony information "without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."

The difference between *Vaughn* and its teaching regarding waiver and what occurred in the instant case was, of course, the successive repetition of the constitutional omission by motion before trial in the district court after the defendant had been denied the right to counsel at his preliminary hearing proceeding. *Accord Ibsen v.*

*State,* 83 Nev. 42, 422 P.2d 543 (1967), where conduct after denial of counsel to preliminary hearing did not constitute a waiver of defendant's constitutional right when counsel was requested.

Waiver was considered by the New Mexico court in *State v. Hamilton,* 104 N.M. 614, 725 P.2d 590, 591–92 (1986), *cert. denied* 107 N.M. 132, 753 P.2d 1320 (1988) which presented the far more justified case where the appearance was without counsel and without prior notice to the court by a continuance request:

> Without offering to appoint counsel or questioning defendant concerning waiver of the right to counsel, the magistrate proceeded with the hearing. Defendant did not object to the absence of counsel. The magistrate, at the conclusion of the hearing, appointed counsel to represent defendant at trial.

The New Mexico court examined the law:

> The sixth amendment to the United States Constitution is a jurisdictional barrier to the conviction and sentence of any indigent defendant who is denied representation by counsel at any critical stage of a criminal proceeding. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The sixth amendment to the United States Constitution is obligatory on state courts through the Due Process Clause of the fourteenth amendment. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). A preliminary hearing is a critical stage of the criminal proceeding. *State v. Vaughn,* 74 N.M. 365, 393 P.2d 711 (1964).
>
> When denial of the right to counsel claims arise, there are two basic inquiries. The first inquiry is whether the defendant waived his right to counsel. A waiver is ordinarily "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023. The burden is on the state to prove that the defendant abandoned this known right. *Brewer v. Williams,* 430 U.S. 387, 97

S.Ct. 1232, 51 L.Ed.2d 424 (1977). In determining whether the defendant waived his right to counsel, courts indulge every reasonable presumption against waiver, not presuming acquiescence in the loss of a fundamental right. *Johnson v. Zerbst. See also State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978).

If the court determines that the defendant intentionally waived his right to counsel, the next inquiry is whether the defendant knowingly and intelligently waived the right. This determination depends on the particular facts and circumstances of each case, including the background, experience and conduct of the accused. *Johnson v. Zerbst.* When the right is waived but the defendant claims that the waiver was not knowing and intelligent, the burden shifts to the defendant to prove the invalidity of the waiver. *State v. Coates,* 78 N.M. 366, 431 P.2d 744 (1967).

After reviewing the record before us, we hold that defendant did not intentionally waive his right to counsel at the preliminary hearing. Accordingly, we need not discuss the validity of the claimed waiver; that is, whether the waiver was knowingly and intelligently made.

\* \* \* \* \* \*

Not only is a defendant not required to request the assistance of counsel in order to trigger sixth amendment protections, a waiver of that protection may not be presumed from a silent record. To the contrary, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley v. Cochran,* 369 U.S. at 516, 82 S.Ct. at 890. *Id.* 725 P.2d at 592–93. *An evidentiary hearing was held on the question of waiver.*

This excellent and comprehensive statement has a near unanimity of support in the law. In *State v. Moore,* 203 Neb. 94, 277 N.W.2d 554, 557 (1979), it is stated by quotation from the earlier case of *Case v. State,* 177 Neb. 404, 129 N.W.2d 107, 108 (1964), *cert. granted sub nom. Newman v. United States,* 379 U.S. 975, 85 S.Ct. 672, 13 L.Ed.2d 566, *vacated* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965) and further re-emphasized:

> "The due process clause of the Fourteenth Amendment guarantees the assistance of counsel unless that right is intelligently and understandingly waived by the accused. Courts must indulge every reasonable presumption against a waiver of fundamental constitutional rights, and do not presume acquiescence in their loss."

\* \* \* Although the defendant had already affirmatively indicated his intention to exercise his constitutional right to counsel by retaining private counsel, the court interpreted the defendant's appearance at trial without counsel as an affirmative, intelligent, and understanding waiver of his constitutional right to counsel simply because the defendant had been advised of his right to counsel a month before. Under the circumstances here it was wholly unreasonable to assume that the defendant had conclusively rejected an offer of counsel, much less that he had affirmatively waived his right to counsel.

An appropriate remedy for a deficient preliminary hearing (defective bind over) is the course of proceedings here pursued; by objection when the case is presented to the district court by motion to obtain relief before trial. *State v. Humphrey,* 823 P.2d 464 (Utah 1991). In Wisconsin, the remedy for the district court (general jurisdiction court) to test contended error in wrongful denial of return of the case to the initiating preliminary hearing court is an interim appeal. *See Webb,* 467 N.W.2d 108. Unfortunately, the Wyoming Supreme Court has rejected the preliminary appeal, *Rude,* No. 91–228 (Wyo. Nov. 13, 1991), and consequently, the appeal right should not be properly waived by subsequent events, either trial or plea bargain.

In *Webb,* the court recently said:

We emphasize that our holding applies only when the defendant fails to seek relief prior to trial. A defendant is not without remedy prior to trial. If the defendant is dissatisfied with what occurred at the preliminary hearing, he can seek relief before trial in a motion to dismiss brought before the trial court based on errors or insufficiencies of the preliminary hearing. He may challenge his bindover by way of a permissive interlocutory appeal from the non-final order binding him over for trial. * * * Further, he may challenge the bindover by supervisory writ if he can show that there was in fact a defect in subject matter or personal jurisdiction.

*Webb,* 467 N.W.2d at 114. *See also Humphrey,* 823 P.2d 464.

Nearly the same result occurred in *State v. Weigand,* 204 Kan. 666, 466 P.2d 331 (1970) where appointed counsel was given ten minutes to prepare after the accused's employed counsel had withdrawn. After a guilty verdict, the conviction was reversed on appeal for retrial.

Another remedy which has also been denied to defendants in Wyoming case law as determined by *Rude,* No. 91–211 (Wyo. Sept. 26, 1991), is a preemptive writ presented to test the propriety of the preliminary hearing. *Com. v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975). In background facts in *Mullen,* the defendant was first denied the right to present evidence in the preliminary hearing and the "legality" of the hearing was tested by petition for writ of habeas corpus by an intermediate appellate court which was granted in writ by an order of remand for the preliminary hearing de novo. That intermediate appellate court decision presented the issue before the Pennsylvania Supreme Court, which stated:

[I]t is the burden of the Commonwealth at a preliminary hearing to establish at least prima facie that a crime has been committed and the accused is the one who committed it. The hearing's principal function is to protect an individual's right against unlawful detention. * * * In seeking this protection, the defendant has the right to contest the existence of a prima facie case and may not be denied the opportunity of presenting evidence which, in his view, negates its existence.

*Id.* 333 A.2d at 757. The right to assistance of counsel is even more precious and constitutionally protected lacking a similar efficient remedy for procedural error correction to provide due process in Wyoming criminal law.

A case with strikingly similar facts regarding counsel presence where the defendant was first declared indigent and then determined to be ineligible for the public defender appointment requiring him to appear at trial unrepresented is *Callaway v. State,* 197 Ga.App. 606, 398 S.E.2d 856, 857 (1990):

At trial on September 19, 1989, the following colloquy occurred: "THE COURT: Is the State ready? MR. ARCHER: State's ready, Your Honor. THE COURT: Mr. Callaway, are you ready? MR. CALLAWAY: I've got a lawyer coming but he's in Hinesville today. THE COURT: I see. Well, it's too late for that. You should have had one a long time ago. I remember back in August I warned you of the dangers of proceeding without an attorney and I told you that you needed to get an attorney. MR. CALLAWAY: I know. But Raymond wouldn't tell me nothing. THE COURT: Sir? MR. CALLAWAY: Raymond wouldn't tell me nothing when I went over there to see him that Wednesday. THE COURT: Well, we're gonna have to go on with the trial because we've already got the jury selected and all, and you've had plenty of time to get a lawyer."

The trial was completed with the defendant at all times representing himself.

The appellate court then recognized:

" 'A person charged with a felony in a state court has an unconditional and absolute constitutional right to a lawyer. *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]. This right attaches at the pleading stage of the criminal process, *Rice v. Olson,* 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367], and

may be waived only by voluntary and knowing action. *Johnson v. Zerbst*, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Carnley v. Cochran*, 369 U.S. 506 [82 S.Ct. 884, 8 L.Ed.2d 70]. Waiver will not be "lightly presumed," and a trial judge must "indulge every reasonable presumption against waiver." *Johnson, supra* [304 U.S.] at 464 [58 S.Ct. at 1023].' *Boyd v. Dutton*, 405 U.S. 1 (92 SC 759, 30 LE2d 755)." *Robertson v. State*, 162 Ga.App. 873, 874, 293 S.E.2d 477.

*Id.* 398 S.E.2d at 857. The appellate decision determined that the trial court abused its discretion when it forced the accused to proceed to trial without legal assistance.

The requirement of at least pro forma proof to bind over a defendant for trial in a dental college admission bribery case was considered by the Pennsylvania Supreme Court in detail in *Com. v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983). The process followed in recognition of the right for a remedy to be provided testing the adequacy of the preliminary hearing followed *Mullen*. The procedural importance of the preliminary hearing and evidentiary requirement for the magistrate decision was re-emphasized by the comprehensive discussion in what was obviously a very political course of events and criminal proceedings. Furthermore, I would perceive that if ineffectiveness of counsel can be raised by collateral attack on criminal conviction, *Com. v. Glasco*, 481 Pa. 490, 393 A.2d 11 (1978), total denial of counsel, likewise, constitutionally requires that a remedy be provided.

The Colorado Supreme Court in *Schwader*, 474 P.2d 607 has recognized the significance of the preliminary hearing in reference to its rules of criminal procedure which creates a constitutional right to counsel at the proceedings by citing *Coleman*, 399 U.S. 1, 90 S.Ct. 1999. Potential conflict of interest in joint representation and undue haste in proceedings denied right to counsel, which is a matter of substance and not form, required Fourteenth Amendment reversal in *Young*, 410 P.2d 256. See likewise, in a civil case, *Barrett v. Gagnon*, 516 P.2d 1202 (Alaska 1973).

A case similar to others noted regarding waiver by appearance at court without counsel is *Lee*, 252 S.E.2d at 228:

That defendant failed to employ counsel during the period between 20 August, when the warrant was served on him, and 2 September, when he was tried, would not, standing alone, support a finding that he had knowingly and intelligently waived his right to counsel. Certainly we do not suggest that a nonindigent defendant may continue stubbornly to refuse to employ counsel after being advised of his right to do so and thereby frustrate the State's ability to bring him to trial; there may be circumstances under which the continued neglect by such a defendant to provide himself with counsel would in itself amount to a knowing and intelligent waiver of counsel. However, no such circumstances appear in the present case.

The guilty plea entered was withdrawn. It was determined that no effective waiver had occurred and a new trial was ordered. *See State v. McWilliams*, 103 Ariz. 500, 446 P.2d 229 (1968) and *Rocha*, 618 P.2d 475. Conversely, time and the circumstances involved in the case makes *Burleson v. State*, 543 P.2d 1195 (Alaska 1975) totally inapplicable for precedent in this case. The difference found among the many cases that, on some occasions, a proper exercise of discretion did occur and others like this involved abject denial which cannot be justified in concepts of approved exercise of discretion. *See Martin v. State*, 720 P.2d 894 (Wyo.1986), requiring the exercise of sound judgment which is reasonable under the circumstances.

Surely, if interrogation must cease when counsel is requested, *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Com. v. Santiago*, 405 Pa.Super. 56, 591 A.2d 1095 (1991), counsel must more persuasively be available for such important procedural functions as the preliminary hearing. *Cardenas*, 811 P.2d 989; *Haight*, 654 P.2d 1232; *White v. State of Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). The fundamental character of a right for counsel was stated in

*Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932) and then restated in *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938) (footnotes omitted):

The "... right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.

Recognition of the constitutional interest to an accused to be represented by qualified counsel is within the essence of Wyoming criminal law. A constitutional deprivation cannot be foreclosed or forgotten. We are faced with that question here considering waiver by plea where the district court yields to the county court and refuses to require a justiciable and jurisdictionally proper opportunity for the defendant to defend in the first critical stage of the criminal proceeding. Denied presence of legal representation when requested for the preliminary hearing effectively destroys the protective right provided by law for the preliminary hearing. Little more than a charade remains. *Coleman,* 399 U.S. 1, 90 S.Ct. 1999. Surely the issue is not still open to debate of whether the preliminary proceeding under Wyoming law is a critical and jurisdictional right when anchored in defined procedure and

assured by the constitutional due process interest. Furthermore:

This Court has held that a person accused of crime "requires the guiding hand of counsel at every step in the proceedings against him," *Powell v. Alabama,* 287 U.S. 45, 69 [53 S.Ct. 55, 64, 77 L.Ed. 158] (1932), and that the constitutional principle is not limited to the presence of counsel at trial. "It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade, supra,* [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)] at 226 [87 S.Ct. at 1932]. Accordingly, "the principle of *Powell v. Alabama* and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.,* at 227 [87 S.Ct. at 1932]. Applying this test, the Court has held that "critical stages" include the pretrial type of arraignment where certain rights may be sacrificed or lost, *Hamilton v. Alabama,* 368 U.S. 52, 54 [82 S.Ct. 157, 158, 7 L.Ed.2d 114] (1961), see *White v. Maryland,* 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193] (1963), and pretrial lineup, *United States v. Wade, supra; Gilbert v. California, supra* [388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)]. Cf. *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), where the Court held that the privilege against compulsory self-incrimination includes a right to counsel at a pretrial custodial interrogation. See also *Massiah v. United States,*

377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] (1964).

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* The determination whether the hearing is a "critical stage" requiring the provision of counsel depends, as noted, upon an analysis "whether potential substantial prejudice to defendant's rights inheres in the ... confrontation and the ability of counsel to help avoid that prejudice." *United States v. Wade, supra* [388 U.S.], at 227 [87 S.Ct. at 1932]. Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution. First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

*Coleman*, 399 U.S. at 7–9, 90 S.Ct. at 2002–03.

Perhaps even more fundamental and moralistic in concurrence by Justice Black, we are told:

I fear that the prevailing opinion seems at times to proceed on the premise that the constitutional principle ultimately at stake here is not the defendant's right to counsel as guaranteed by the Sixth and Fourteenth Amendments but rather a right to a "fair trial" as conceived by judges. While that phrase is an appealing one, neither the Bill of Rights nor any other part of the Constitution contains it. The pragmatic, government-fearing authors of our Constitution and Bill of Rights did not, and I think wisely did not, use any such vague, indefinite, and elastic language. Instead, they provided the defendant with clear, emphatic guarantees: counsel for his defense, a speedy trial, trial by jury, confrontation with the witnesses against him, and other such unequivocal and definite rights. The explicit commands of the Constitution provide a full description of the kind of "fair trial" the Constitution guarantees, and in my judgment that document leaves no room for judges either to add to or detract from these commands. I can have no part in unauthorized judicial toying with the carefully selected language of our Constitution, which I think is the wisest and best charter of government in existence. It declares a man charged with a crime shall be afforded a lawyer to defend him even though all the judges throughout the entire United States should declare, "It is only when we think fairness requires it that an accused shall have the assistance of counsel for his defense." For one, I still prefer to trust the liberty of the citizen to the plain language of the Constitution rather than to the sense of fairness of particular judges.

*Id.* at 12–13, 90 S.Ct. at 2005.

IV.

WAIVER OF VIOLATED CONSTITUTIONAL RIGHT BY SUBSEQUENT ENTRY OF A GUILTY OR NOLO CONTENDERE PLEA

Any resolution by rejection of the constitutional interest of the defendant to have a properly counseled and conducted preliminary hearing or affixation of procedure waiver either at the preliminary hearing or upon appearance before the district court as a factual conclusion totally lacks credibility. The real question comes within the third issue which is the waiver by plea of any right to challenge the constitutional deprivation. I need not contest the nonjurisdictional issue waiver concept upon

which the majority's decision is founded to find requirement to reverse. *Zanetti v. State*, 783 P.2d 134 (Wyo.1989); *Vallo v. State*, 726 P.2d 1045 (Wyo.1986); *Tompkins v. State*, 705 P.2d 836 (Wyo.1985), *cert. denied* 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Under the established structure of Wyoming law, I would find that a void or invalid preliminary hearing, unless specifically and directly waived, cannot provide "jurisdiction" or "justification" for further proceedings in the district court within a due process application of Wyo. Const. art. 1, § 6.[6] This really is the direction provided

---

6. In acceding to the jurisdictional test for the purpose of this dissent, I only agree that the "test" has been previously considered in prior Wyoming cases. *Zanetti*, 783 P.2d 134; *Sword v. State*, 746 P.2d 423 (Wyo.1987). I neither agree to the sufficiency nor necessarily accept the rationale of the "jurisdiction" test as a condition of non-forfeitability of constitutional deprivation by entry of a guilty plea.

The first question requiring answer about the waiver/forfeiture/relinquishment result by entry of a guilty plea is whether the justification for loss of a constitutional right from violative procedure when a guilty plea is subsequently entered occurs because of waiver or forfeiture or more recently defined to be relinquishment. *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Neither the authorities nor the cases agree on the answer to this question. If a waiver is no "intentional relinquishment or abandonment of a known right or privilege," *Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023, the most recent United States Supreme Court examination on this subject makes clear the answer is not waiver, but it is forfeiture restated to be relinquishment whether knowingly done or not. *Broce*, 488 U.S. at 573, 109 S.Ct. at 764 stated: "Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty. Waiver in that sense is not required." The obvious problem in applying *Broce* to these cases is that here, neither defendant ever admitted guilt so that any rational delineation of admitted guilt as the basis for decision to apply forfeiture or relinquishment cannot be advanced.

For practical approach, *Broce* does, however, start with an analysis within the general scope of case law, but only to start "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, [he] is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose [by forfeiture/relinquishment rights to] the collateral attack. There are exceptions * * *." *Broce*, 488 U.S. at 569, 109 S.Ct. at 762.

It is this subject of exceptions, if any, and obviously there are some, that pervades the forfeiture or relinquishment constitutional deprivation by guilty plea cases and scholastic discussions, some of which are strongly phrased. The first rule generally abandoned, since not even acceptable to the United States Supreme Court in current cases, is described as the "lid on the box, whatever is in it." *United States v. Bluso*, 519 F.2d 473 (4th Cir.1975). *See also* Peter Westen, *Away From Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure*, 75 Mich.L.Rev. 1214 (1977). The "lid on the box" rule recognizes the guilty plea to forfeit violated constitutional rights except only those directly related to the entry of the plea and its voluntariness. This, of course, is the "no exception" rule.

There is a second rule, not so clearly stated in cases but definitively presented in law journals and text, to explain the multi-direction of decisions. It apprehends forfeiture unless the constitutional deprivation could not have been corrected by alternative proceedings when committed.

The third approach is one not stated by the United States Supreme Court in any case, but followed by some intermediate appellate federal courts and also some state courts, including specifically Wyoming. This is forfeiture by plea if jurisdiction for sentencing by the court existed. *Broce* comes closer than any other United States Supreme Court case to the concept by the scope of general language used, although certainly not adopting specifically a jurisdictional test.

There may even be designed in a result from the *Broce* case a further adaptation based on the result definition and not based on the cause. This is the "break in the chain" delineation. *Lefkowitz v. Newsome*, 420 U.S. 283, 289, 95 S.Ct. 886, 889, 43 L.Ed.2d 196 (1975); *Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608. *See State v. Grosh*, 387 N.W.2d 503 (S.D.1986). The trouble with this concept is the analysis defines an observation, but not a principle for constitutional right application. It becomes a synonym for relinquishment as determined by subsequent event. The *Grosh* court, in quoting from *Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608, stated: "Rationale being that 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.'" *Grosh*, 387 N.W.2d at 507. Unfortunately, it does not predict why some types of denied constitutional rights fit and others do not since the same "chain" would always be identically broken by the guilty plea. Compare the break in the link destroying the "continuity" for the same offense in *Simonds v. State*, 762 P.2d 1189 (Wyo.1988).

by this court in analysis of "substantially the same offense" in *Bartlett v. State*, 569 P.2d 1235, 1243 (Wyo.1977), authored by Justice Rose.

Although there is legitimacy provided in some case law for the posture of the majority decision, from a careful review of United States Supreme Court cases or in proper context other decisions historically of this court, I do not find justification for this decision now presented. I reject the broad-based waiver concept of extinguished right to a preliminary hearing including the constitutional opportunity for counseled representation. The greater wisdom of the federal courts in permitting the conditional plea becomes self-evident in a case of this kind; but taking the real world as it is, I would not require a conditional plea in order to provide a remedy when a preliminary hearing constitutional interest is effectively denied. *See* F.R.Cr.P. 11(a)(2); Jon Douglas Botsford, Comment, *Conditioned Guilty Pleas: Post–Guilty Plea Appeal of Nonjurisdictional Issues*, 26 UCLA L.Rev. 360 (1978); and Note, *Conditional Guilty Pleas*, 93 Harv.L.Rev. 564 (1980).

The discountenance problem with a jurisdictional test to define the rule exception of non-forfeiture of the constitutional defects

The fact of the matter is that no real rational, meaningful, or consistent test has been developed, except forfeiture/relinquishment was applied in some cases to some subjects and was not applied in others, whether defined as "jurisdiction," "lid on the box," "not correctable by alternative proceedings," "break in the chain" or "ad hoc adjudication based on the facts of the case."

The results are issue sensitive without necessary consistency within a single issue as, for example, double jeopardy preclusion. *Cf. Broce*, 488 U.S. 563, 109 S.Ct. 757 *with Blackledge*, 417 U.S. 21, 94 S.Ct. 2098, and then compare further to *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). We seem to agree that forfeiture/relinquishment by plea does not occur if the criminal statute is unconstitutional, *Armijo v. State*, 678 P.2d 864 (Wyo. 1984), or if it is void for vagueness, *United States v. Curcio*, 712 F.2d 1532 (2nd Cir.1983), or the charge does not state a criminal offense, *United States v. Edrington*, 726 F.2d 1029 (5th Cir.1984); *United States v. Lopez*, 704 F.2d 1382 (5th Cir.), *cert. denied* 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983); *State v. Browning*, 245 Kan. 26, 774 P.2d 935 (1989).

in guilty plea cases was factually stated in Peter Westen, *Away From Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure*, 75 Mich.L.Rev. 1214 (1977), and then more dispositively stated in Stephen A. Saltzburg, *Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty*, 76 Mich.L.Rev. 1265 (1978). Peter Westen, *Forfeiture by Guilty Plea—A Reply*, 76 Mich.L.Rev. 1308, 1330 (1978) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 151 (1970) and footnotes omitted) stated:

Thus far we have discussed two theories for distinguishing constitutional defenses that survive a guilty plea from those that may be lost by pleading guilty. Yet there remains a third theory—namely, that whether constitutional claims survive a guilty plea depends on whether they are "jurisdictional." Fortunately, the Supreme Court itself has eschewed the talismanic notion of jurisdictional error. In Judge Henry Friendly's inimitable phrase, the Court has declined to "kiss the jurisdictional book." But some lower courts and commenta-

In regard to judicial recusal, the decision is not clearly resolved. *See United States v. Gipson*, 835 F.2d 1323 (10th Cir.), *cert. denied* 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988), and particularly so since that court cited its decision in *United States v. Broce*, 781 F.2d 792 (10th Cir.1986) which has now been reversed by the United States Supreme Court in *Broce*, 488 U.S. 563, 109 S.Ct. 757. These two are to then be compared with the test of facial duplication as stated for double jeopardy forfeiture by plea in *Griffin v. State*, 540 N.E.2d 1187 (Ind.1989).

Illegal search and seizure, although principally based on California statutory law, was not a forfeited issue in *People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974). *See People v. Rios*, 16 Cal.3d 351, 128 Cal.Rptr. 5, 546 P.2d 293 (1976). *Contra People v. Wilkens*, 139 Mich. App. 778, 362 N.W.2d 862 (1984). *See also Racine County v. Smith*, 122 Wis.2d 431, 362 N.W.2d 439 (1984), where a Wisconsin statute denied waiver upon guilty plea for a suppression question.

tors incline to do so, and it deserves a comment.

The obvious difficulty with "jurisdictional error" is that it is not self-defining; it is a label one attaches to those constitutional defenses that are already determined—by some anterior standard—to deserve to be heard. This can be illustrated by comparing the different ways in which "jurisdictional" is used in habeas corpus cases on one hand and guilty plea cases on the other. Constitutional claims relating to the process of indictment are said to be "jurisdictional" for purposes of determining whether a defendant may assert them by a federal writ of habeas corpus; yet the same claims are said to be "nonjurisdictional" for purposes of deciding whether a defendant may assert them following a guilty plea.

The author then considered a more plausible explanation regarding jurisdiction over the person or jurisdiction over the subject matter in an analysis and then concluded:

In conclusion, for purposes of defining the kinds of claims that survive a guilty plea, the notion of jurisdictional error is either fallacious or useless: If understood in its technical sense as a term of art, it fails to explain the cases; if understood more broadly as a term for the guilty plea cases alone, it is superfluous.

*Id.* at 1334.

The subject is considered by 2 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure*, § 20.6 at 679 (1984) (citing Peter Westen, *supra*, 76 Mich.L.Rev. at 1330–34 and footnotes omitted): "Nor can the matter be resolved by saying, as some courts and commentators have, that whether constitutional claims survive a guilty plea depends on whether they are 'jurisdictional,' for this simply begs the question."

A different explanation is provided for the jurisdiction test in 2 Wayne R. LaFave and Jerold H. Israel, *supra*, § 20.6 at 227 n. 20 (Supp.1991):

The "jurisdictional" approach is most commonly used in holding a defendant can question whether the charge states an offense even after his plea of guilty. *United States v. Morales–Rosales*, 838 F.2d 1359 (5th Cir.1988); *United States v. Edrington*, 726 F.2d 1029 (5th Cir. 1984); *United States v. Lopez*, 704 F.2d 1382 (5th Cir.1983); *State v. Browning*, 245 Kan. 26, 774 P.2d 935 (1989); *State v. Bargen*, 219 Neb. 416, 363 N.W.2d 393 (1985).

Consider also *United States v. Gipson*, 835 F.2d 1323 (10th Cir.1988) (defendant's motion for recusal of judge under 28 U.S.C.A. § 455 survives the guilty plea where claim is fact, and not just appearance, of impartiality, as statute declares in such instance judge cannot accept a waiver of his disqualification, and this "creates what is tantamount to a 'jurisdictional' limitation on the authority of a judge to participate in a given case").

This latter concept reverses logic to acknowledge the rule exists, but not to authenticate its creative source in case precedent. In explanation, we are provided justification—not reasoned description.

If the Westen and LaFave/Israel analyses are considered to be outspoken, there is considerably more strongly defined criticism actually written in the days when the United States Supreme Court was far more moderate than it is today. One such source is a review of the *Brady* trilogy, *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Albert W. Alschuler, *The Supreme Court, The Defense Attorney, and the Guilty Plea*, 47 U.Colo.L.Rev. 1, 70–71 (1975) (quoting *United States v. Bluso*, 519 F.2d 473, 474 (4th Cir.1975) and footnotes omitted), after a comprehensive review of the three decisions which came to be moderated by *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) and *Blackledge*, 417 U.S. 21, 94 S.Ct. 2098 and now followed by *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), stated in conclusion:

In the guilty-plea trilogy, Justice White adhered to what one of my colleagues, Professor Lucas A. Powe, has called the "quacking ducks school of opinion-writing." To the unsophisticated, the issue in a case like *Brady* seems simple and straightforward: a defendant was bludgeoned into a guilty plea by the prospect that he would be executed for standing trial. Justice White, however, sent forth a fleet of quacking ducks until this issue disappeared beneath the surface: Voluntariness can be determined only by examining all of the circumstances of the case; the state encourages guilty pleas in various ways throughout the criminal process; the defendant was represented by competent counsel throughout; he was not threatened with any illegal action.

Supreme Court opinions deserve to be taken at face value, and I have therefore devoted this article to exploring the guilty-plea trilogy in detail. My conclusion is that the opinions of the trilogy are essentially hypocritical. These opinions disregard both recent and long-standing precedent, pervert or ignore the records in the cases before the Court, and degrade the right to trial by treating the waiver of this right in a manner that cannot be reconciled with the Supreme Court's treatment of other waiver problems.

I should confess in closing to some small sympathy for the Supreme Court's dilemma. To insist upon constitutional values when these values point to a major restructuring of the criminal-justice system would require considerable courage, and it is only through decisions like *Brady*, *McMann*, and *Parker* that the guilty-plea system can be maintained. As our criminal courts have become more dependent on the expedient and the unconstitutional, the Supreme Court has felt an impulse to "lock the door and throw away the key"—an impulse to avoid rulings whose apparent virtue would be adherence to constitutional principle and whose apparent vice would be the creation of ramifications that could be foreseen only dimly. Nevertheless, one can hope that a bolder Supreme Court will someday tire of elaborate rationalization for a lawless regime of criminal justice and will rule that principles of constitutional fairness extend even to guilty-plea cases.

*See also* Robert N. Shwartz, Note, *The Guilty Plea as a Waiver of "Present But Unknowable" Constitutional Rights: The Aftermath of the Brady Trilogy*, 74 Colum.L.Rev. 1435 (1974) and Michael E. Tigar, *Foreword: Waiver of Constitutional Rights: Disquiet in the Citadel*, 84 Harv. L.Rev. 1 (1970).

It is apparent in systematic observation that the diverse principles established for federal courts defined by the supervisory declination of the United States Supreme Court need not overlay what the United States Supreme Court requires of state courts under a Fourteenth Amendment application. Consequently, *Broce*, within its decisional due process attribution for federal courts invoking finality in *Broce* of the *Menna* footnote, "judgment on its face" dicididum may not have application to state courts under *Menna* and *Blackledge* or, for that matter, the withdrawn plea bargain case of *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

There simply is no consistently reliable and logical explanation for the composite cases beyond status observations except that the jurisdictional test does not fit within the body of the United States Supreme Court case law at all. The splintered result on double jeopardy, *Menna* compared to *Broce*, proves that when decision rests on the appearances provided by the existent record, *see Broce*, 488 U.S. at 581, 109 S.Ct. at 768, Blackmun, J., dissenting; *see also Blackledge* and *Menna*, jurisdiction cannot provide a reasoned test for the double jeopardy result. *See Menna*, 423 U.S. at 62, 96 S.Ct. at 242. If there is some consistent explanation, let alone the appearances of a rule, principle, or standard, it cannot be derived from the application of a concept of jurisdiction to the variegated cases except perforce for those where the explanation is given that the forfeiture did not occur.

My disaffinity on this subject rejects the entirety of forfeiture unless willingly, intelligently and thoughtfully done by the defendant. Furthermore, even if voluntary, willingly, and intelligently, the forfeiture cannot suffice without examination to determine whether a criminal offense was committed, was properly charged, and was admitted. This could, it would seem, send the quacking ducks back to agricultural pursuit. We should adjure forfeiture/relinquishment waiver concepts in the guilty plea scenario except to provide compliance with the minimum standards established by the United States Supreme Court and replace, for a day-to-day application of the Wyoming judicial processes, a thoughtful and consistent pathway to determine and apply. I do not find an arbitrary waiver, forfeiture or relinquishment defined as limitations within the Wyoming constitutional protection of this state's citizens. Otherwise, we have no "principled" rule to apply.

An illustration can be found in the well-established text of 1 Charles A. Wright, *Federal Practice and Procedure: Criminal 2d* § 175 at 627–28 (2d ed. 1982) (footnotes omitted), where the rule was stated in text:

> But the preclusive effects of guilty pleas do not apply to constitutional claims that go "to the very power of the State to bring the defendant into court to answer the charge brought against him." A defendant who has pleaded guilty may still contend that the indictment or information failed to state an offense, or that the statute under which he was charged is unconstitutional, or that the prosecution is barred by double jeopardy.

1 Charles A. Wright, *supra,* at 126 (Supp. 1991) required reconsideration by virtue of *Broce* which recognized the transient nature of what they thought the rule was as now altered for double jeopardy by a criteria of "obviousness" on the face of the record. The commentator has apparently not yet had time to study the Blackmun dissent in *Broce* to recognize the question of what possible difference it can make in regard to a constitutional deprivation which goes to the very jurisdiction of the court,

whether factual supplementation of the record is required or not.

## V.

## STATUS OF THE PRELIMINARY HEARING IN WYOMING LEGAL HISTORY

The right to a preliminary hearing has existed within the structure of Wyoming law for a period of time predating statehood by more than twenty years. 1869 Wyo.Sess.Laws ch. 74, § 36; *Thomas v. Justice Court of Washakie County,* 538 P.2d 42 (Wyo.1975). In this state, since the state constitution was adopted *after* the right to a preliminary hearing had been created, the process has been originally and continues to be a critical stage in the criminal proceeding based on state constitutional guarantees as well as affirmative rule requirements. *Hurst,* 563 P.2d 232; *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). *See also Simonds v. State,* 762 P.2d 1189 (Wyo.1988).

This case comes remarkably close to *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) where, at trial, like here at preliminary hearing, the defendant was asked to defend without counsel. *Gideon,* in reversing the anachronism of *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), established that counsel is a fundamental interest and right. *See also Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), requiring counsel assistance to be available for the defendant to defend a criminal misdemeanor charge.

It is my persuasion that the majority of this court, artificially and in contravention of the Wyoming Constitution, creates jurisdiction in the district court despite the present Wyoming Rules of Criminal Procedure where no or perhaps no valid preliminary hearing was provided. It seems realistic in analysis of the state's laws that the jurisdiction of the district court is limited to either actually finding waiver of an invalid or absent preliminary hearing or taking action as an appellate jurisdiction to facilitate correction by remand direction. Otherwise, I would find in present Wyoming law that the district court, serving as the

trial tribunal, lacks jurisdiction to proceed. We should look at the historical status of Wyoming law and, in the process, not ignore the state and federal constitutions where it is first established, as it must be here for this case, that the preliminary hearing and any bindover order was void and of no effect. When either a requested preliminary hearing was denied or an invalid preliminary hearing was provided, we then are required to search for how the district court acquires jurisdiction in order to justify entry of a subsequent plea or verdict.

In historical perspective, the right to a preliminary hearing was initially established in 1869 Wyo.Sess.Laws ch. 74, § 29. Wyoming law then provided a period of one year during which the county attorney had unlimited discretion to file informations in the district court. That right was provided in 1891 Wyo.Sess.Laws ch. 59, § 7 and stated that "[n]o information shall be filed against any person for any felony until such person shall have had a preliminary examination therefor * * * or whenever the county and prosecuting attorney is sati[s]fied that a crime or offense has been committed in this county." The very next session of the Wyoming legislature in 1893 Wyo.Sess.Laws ch. 21, § 1 eliminated the last clause which provided this discretion for direct filing by the prosecuting attorney. The Wyoming legislature in the next legislative session, 1895 Wyo.Sess.Laws ch. 123, § 7, added an exception permitting direct filing of the information in the district court within thirty days immediately preceding the first day of the regular term of court of the county and continuing as a period thereafter for thirty days immediately following the first day of such regular term. A further proviso was added that if the defendant was not tried during the term, he would be entitled to the preliminary hearing. The sixty day period surrounding the first day of the term authorizing direct filing continued in Wyoming law until Wyo.Stat. § 7-124 (1957) which was superseded by the adoption of the Wyoming Rules of Criminal Procedure effective February 11, 1969.

Since 1969, no provisions in Wyoming law permit filing of an information charging a felony in the district court without previous reference to the examining magistrate or officer or a waiver of such preliminary hearing. Several earlier Wyoming cases had validated non-preliminary hearing exceptions contained within the statute involving either misdemeanors or a "thirty day before or after the first day of the term" rule. *State v. Spears*, 76 Wyo. 82, 300 P.2d 551 (1956); *State v. Vines*, 49 Wyo. 212, 54 P.2d 826 (1936); *State v. Tobin*, 31 Wyo. 355, 226 P. 681 (1924); *Hollibaugh v. Hehn*, 13 Wyo. 269, 79 P. 1044 (1905). The only case in Wyoming history, *State v. Boulter*, 5 Wyo. 236, 39 P. 883 (1895), was determinatively established and since never superseded the basic concept which determined that only subject to the statutory exception, the prosecuting attorney had no jurisdiction to file an information in district court which was different from the substance of the charge considered in the preliminary hearing by the committing magistrate. *See Simonds*, 762 P.2d 1189, which is similarly raised but not dispositive in result. In *Boulter*, a plea in abatement required dismissal for an information charging first degree murder when commitment after the preliminary hearing was granted only on a second degree murder charge. I would find *Boulter* to be the determinative law of Wyoming for nearly one century. It established that except for the direct filing exception, jurisdiction in the district court cannot be created without a proper preliminary hearing. That was the 1895 law of *Boulter* and should remain in law today. Furthermore, a proper preliminary hearing is defined as one conducted in a fashion so that under determinative law, its decision is valid. Such an occurrence does not result when a right to counsel is denied in the proceeding. See the waiver by plea discussion in *Menna*, 423 U.S. 61, 96 S.Ct. 241 and 2 Wayne R. La-Fave & Jerold H. Israel, *supra*, at 676.

## VI.

## EFFECT OF THE INVALID PRELIMINARY HEARING

Perhaps the most comprehensive examination of this specific subject was pursued

by the New Mexico court in *Vaughn,* 393 P.2d 711. That court considered both the effect on the district court of an invalid preliminary hearing and then whether acquiescence or non-action could cause waiver upon arraignment in the district court. Since the second issue involving the explicit objection was correctly protected by objection of Davila and Robinson, only the first issue requires consideration. The evaluation of the resolution in *Vaughn* is both logically persuasive and precedentially determinative:

> The first question involves one of the jurisdiction of the district court. We think it is clear that the effect of denying an accused a constitutional right at a preliminary hearing *is the same as though there was no hearing. State ex rel. Hanagan v. Armijo,* 72 N.M. 50, 380 P.2d 196. Defendants argue that absent a preliminary examination or its waiver, the district court never acquired jurisdiction of the case, and consequently there could not have been an effective waiver in the district court. We do not agree. District courts have jurisdiction of criminal cases, Constitution, Art. VI, § 13. The district court acquired jurisdiction of this case upon the filing of the information.

> A state court is not commanded by the language of the Sixth Amendment to furnish counsel to a defendant in a criminal case as a matter of course, as is a federal court. Rather, the Sixth Amendment's guarantee of counsel at all critical stages of a criminal proceeding is of such a fundamental character and so essential to a fair trial that it is made obligatory on state courts by the due process clause of the Fourteenth Amendment. * * *

> It should be noted, however, that the jurisdiction acquired at the beginning of the case may be lost "in the course of the proceeding" by failure of the court to remand for a preliminary examination when its absence is timely brought to the attention of the district court. * * *

> The absence of either a preliminary examination or its intelligent waiver, or the denial of representation by counsel at such hearing, may be called to the attention of the court at any time prior to arraignment, by plea in abatement or in any other appropriate manner. *State v. Rogers,* 31 N.M. 485, 247 P. 828; *State ex rel. Hanagan v. Armijo, supra;* or the court may inquire into the proceedings before the magistrate on its own motion. When violation of a constitutional right in the proceedings before the magistrate is brought to the attention of the trial court and found to exist, the accused's right and the court's duty is to abate the information until there has been a proper preliminary examination, and remand the accused to the magistrate for such examination unless it be competently waived.

*Id.* 393 P.2d at 713–14 (emphasis added). *See also Humphrey,* 823 P.2d 464.

It is well established that the initial opportunity for the defendant to contest invalidity or impropriety in the preliminary hearing process conducted by the committing commissioner is by appellate review in the district court raised by motion attacking the commitment (bindover) order. 1 Charles A. Wright, *supra,* at § 86. *See also Webb,* 467 N.W.2d 108 and *Mullen,* 333 A.2d 755.

In the Wyoming Constitution, we start with well-defined due process, Wyo. Const. art. 1, § 6: "No person shall be deprived of life, liberty or property without due process of law," and Wyo. Const. art. 1, § 8, open courts. For this case, Wyo. Const. art. 1, § 10 states: "In all criminal prosecution the accused shall have the right to defend in person and by counsel * * *."

The procedural statutes passed to court rule responsibility for the establishment of a constitutional process:

> (a) Crimes shall be prosecuted by indictment, information, complaint or citation as provided by the rules promulgated by the Wyoming supreme court.

> (b) All prosecutions shall be carried on in the name and by the authority of the state of Wyoming and shall conclude "against the peace and dignity of the state of Wyoming."

(c) All matters relating to the content and form of indictments, informations and complaints shall be governed by the rules promulgated by the Wyoming supreme court.

Wyo.Stat. § 7-1-106 (1987).

The question then presented, if a direct-filed information is utilized in non-compliance with the Wyoming Rules of Criminal Procedure, is whether jurisdiction is created for the district court to proceed as the trial tribunal through the guilt determinate processes in the absence of the initially required properly valid preliminary hearing? [7] It is basic that an order issued by a court without jurisdiction of either the subject matter or the parties is void. *Nicholaus v. Nicholaus,* 756 P.2d 1338 (Wyo. 1988); *McLaughlin v. Upton,* 2 Wyo. 32 (Wyo.1879), *rev'd* on the redefined issue to involve an unlitigated statute of limitations and not a decisive jurisdictional question, 105 U.S. 640, 26 L.Ed. 1197 (1881); *Wolcott v. Territory,* 1 Wyo. 67 (Wyo.1872); *People v. McKinnon,* 139 Mich.App. 362, 362 N.W.2d 809 (1984); *Matter of Hague,* 412 Mich. 532, 315 N.W.2d 524 (1982). *See also State v. Hegeman,* 248 Mont. 49, 808 P.2d 509 (1991), which considered the different appellate and trial jurisdictions of the state district court.

Within the Wyoming rules presently in effect for this case, and prospective as applied by the 1992 revision, jurisdiction is initiated for any felony criminal prosecution by a filing and presentation to the examining commissioner, judge of the county court, or justice of the peace. *See* W.R.Cr.P. 3, the information or citation; W.R.Cr.P. 4, the warrant or summons upon information; W.R.Cr.P. 5, initial appearance; and W.R.Cr.P. 44 (formerly W.R.Cr.P. 6), right to assignment of counsel; all of which lead to the dispositive decision by that court of initial jurisdiction by resolution through a preliminary hearing. In all cases, except where prosecution initiates from a grand jury indictment, the defendant is entitled to a commissioner (county judge or justice of the peace) conducted preliminary hearing. W.R.Cr.P. 5.1 (formerly W.R.Cr.P. 7). A clear examination of this entire subject is provided in the current Utah case of *Humphrey,* 823 P.2d 464.

It then follows from the Wyoming Rules of Criminal Procedure that the only way to give jurisdiction to the district court for proper filing of an information under W.R.Cr.P. 9, is either by grand jury indictment or by information supported by a finding or waiver of probable cause provided by the preliminary hearing jurisdiction. I part with the majority at this point in assessment that jurisdiction of the district court *as a trial court* cannot be conferred by receipt of an invalid or void order of probable cause unless replaced by an executed indictment from a grand jury.[8] To hold a preliminary hearing without counsel present, unless the right to counsel has been competently, intelligently, and voluntarily waived, vitiates the hearing. *McIntosh,* 458 P.2d 222; and also cited as authority, *Pearce,* 354 F.2d 884 and *Vaughn,* 393 P.2d 711. The Oklahoma court stated the rule in a trial context: "We reiterate our clear statements that under both the state and federal constitutions anything less than a record which shows that the defendant rejected the offer of counsel with knowledge and understanding of the perils of self-representation is not waiver."

---

**7.** It may be of academic interest in historically recognizing that in redrafting the Wyoming Rules of Criminal Procedure effective March 24, 1992, a forceful proposal was presented to adopt a unitary filing first in the district court and then followed with a sequential reference to the county court for conduct of the preliminary hearing. Adamant objections by county judges and others, and a close committee vote, resulted in return to the present system involving initiation of the criminal proceeding for felony cases in the county court or justice of the peace jurisdictions. Consequently, the jurisdictional issue is continued in result where it otherwise had been eliminated in the proposed modernized, unitary filing process. Concerns of turf protection were presented in adamant objection to the change.

**8.** I continue to reject the *Sword* concept, *Sword v. State,* 746 P.2d 423 (Wyo.1987), as to the relationship of the filing to an invalid grand jury proceeding, but that is not the issue presented here.

*Nave v. State,* 808 P.2d 991, 994 (Okl.Cr. 1991).

The stark issue clearly presented is what occurs when the information is filed in the district court contrary to law which requires the proper preliminary hearing process as a critical initiating proceeding. *Boulter,* 39 P. 883 clearly directs us to the recognition that the information filing in the district court is jurisdictionally controlled and confined by the action of commitment following the preliminary hearing. Where, as in these cases, the action was void—not erroneous—I find that no jurisdiction is created in the district court as a successor trial court to conduct the criminal guilt proceeding. *Vaughn,* 393 P.2d 711. In the absence of waiver, I perceive that the district court acts only as an appellate tribunal by complying with appellate responsibility to assess the procedural and constitutional validity of actions of the committing commissioner when objection is taken initially before a plea is made before the district court. *See Humphrey,* 823 P.2d at 468, relating to trial court examination of this "threshold jurisdictional matter * * *."

> A magistrate issues a bindover order after a preliminary hearing upon finding that there is probable cause to believe the defendant has committed the crime charged in the information. * * * By the bindover order, the magistrate requires the defendant "to answer [the information] in the district court." * * * The information is then transferred to the district court, permitting that court to take original jurisdiction of the matter.[2] At that point, the district court has the inherent authority and the obligation to determine whether its original jurisdiction has been properly invoked. In doing so, the district court need show no deference to the magistrate's legal conclusion, implicit in the bindover order, that the matter may proceed to trial in district court, but may conduct its own review of the order.

---

[2] Historically, a district court did not acquire jurisdiction until an information was filed with it, and this could not occur until after the magistrate's preliminary hearing and bindover. *Id.* at 465–66.

## VII.

## CONCLUSION

The right of the general trial court under either federal or general state law to recommit for proper preliminary hearing as a matter of jurisdiction is really not subject to significant question. *Vaughn,* 393 P.2d 711. The issue is whether if the general trial court elects to waive previously committed constitutional error in the preliminary hearing, can the court then exercise acquired jurisdiction for trial with an invalid prior committing proceeding? I find the answer to that question likewise to be clearly "no." The defendant, following invalid proceedings in the preliminary hearing, should be given the right to effectively object. Alternatively, but only with an affirmative and clearly defined decision, the defendant has the right to waive objection and permit the district court proceeding to continue. In the absence of waiver, the void or voidable preliminary hearing process is not a constitutional right subject to forfeiture or, for that matter, waiver. Essentially, if the preliminary hearing failed to provide constitutional due process, the district court does not achieve jurisdiction as a nisi prius court to further proceed within Wyoming law. It may be a magnified analysis and concept, but I see no greater validity for jurisdiction from an information filed directly in the district court if unsupported as required by a valid preliminary hearing in that critical stage than if the information should be filed in the office of the county clerk instead of the clerk of court.

Consequently, judicial insertion of forfeiture by guilty plea after an accused has been unconstitutionally denied his right to a valid preliminary hearing is inappropriate. I would reverse these cases to require that the constitutional right to have assistance of counsel at every critical stage of the criminal process be recognized for Davila and Robinson. This historical component of the right to counsel as a fundamen-

tal requirement in American law should not be casually superseded. *Carnley,* 369 U.S. 506, 82 S.Ct. 884; *Johnson,* 304 U.S. 458, 58 S.Ct. 1019. Furthermore, waiver cannot be presumed from a silent record. *Carnley,* 369 U.S. at 516, 82 S.Ct. at 890. Unhappily, we do not have here even a silent record. The requirement for counsel, first requested and then denied, is clearly documented. That denial of the right to counsel constituted a fundamental abridgment of access to justice, whether defined in terms of Fifth Amendment due process or Sixth Amendment right to counsel under the United States Constitution or Wyo. Const. art. 1, § 6, due process; Wyo. Const. art. 1, § 8, open courts; or Wyo. Const. art. 1, § 10, right to counsel. The denied counsel at the preliminary hearing voids, vacates, and eviscerates the proceedings into a nullity. *Hamilton,* 725 P.2d 590; *Coleman,* 399 U.S. 1, 90 S.Ct. 1999; *Callaway,* 398 S.E.2d 856. See also the denial of constitutional right for counsel at trial in *Argersinger,* 407 U.S. 25, 92 S.Ct. 2006; *Gideon,* 372 U.S. 335, 83 S.Ct. 792; and *Moore,* 277 N.W.2d 554.

I accept the majority delineation and accompanying general law that a guilty or nolo contendere plea can forfeit previously committed errors of law or constitutional infirmities, but not those whether defined as jurisdictional or intrinsically basic as a constitutional right like representation of counsel during prosecution. For Wyoming, I would hold that a preliminary hearing held without requested counsel is void and absolutely ineffective and a voided preliminary hearing provides no jurisdiction for the district court to effectively proceed except to act in an appellate status. In these cases, the convictions by guilty pleas should be reversed and the cases should be returned to the county court for proper preliminary hearings. After that, Davila and Robinson could either elect to plead guilty anew or defend to jury verdict.

Consequently, I respectfully dissent.